UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER C. ABBS,

        Plaintiff,

v.

CON-WAY CENTRAL EXPRESS, INC., a/k/a
CON-WAY TRANSPORTATION SERVICES,
INC.,

        Defendant.

_____/

CIVIL CASE NO. 04-60201
HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**I.    INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment (Doc. # 28). Plaintiff alleges Defendant unlawfully terminated his employment. Plaintiff claims he was discharged because of his age and because he engaged in a federally protected activity.

Con-Way Central Express ("CCX") is a non-union freight transportation company. Plaintiff began his employment with CCX in 1993 as a Driver/Sales Representative. The employment application he signed on March 23, 1993, and the offer of employment dated June 8, 1993, both contain at-will employment statements. Specifically, just above Plaintiff' signature, the application provides: "I understand and agree that my employment with the company, including my employment in any and all subsequent positions, may be terminated by me or by Con-Way at any time, for any reason, with or without cause, and with or without notice." The offer of employment states: "All offers of employment and continued employment

with the company is mutually understood to be 'employment at will.' This means that CCX has the right to terminate your employment at any time, for any reason, with or without notice . . . ." Plaintiff admitted at his deposition that he was an at-will employee. Dep. of Abbs at 101-103. He also testified that CCX had never changed that arrangement during his employment. Id. at 102.

Part of Plaintiff' responsibilities pursuant to the Federal Motor Carrier Safety Regulations ("FMCSR") and CCX policy was to fill-out and submit a Driver's Record Duty of Status, or what is more commonly referred to as a driving log. Pursuant to CCX policy, drivers can only record the following for a 24-hour period: (a) off duty time; (b) time within the sleeper berth of a vehicle; (c) driving time; and (d) on-duty non-driving. One purpose of this log is to ensure that drivers do not go over the federally regulated daily/weekly hours of service limitations, 15 hours in a day, 60 hours in a week. The FMCSR dictate how time is logged and whether it is to be considered "on-duty" or "off-duty." To summarize these requirements CCX drivers are provided with a "Driver Sales Representative Survival Guide." Company policy, as restated in the Survival Guide provides that falsification of any company records, including Department of Transportation ("DOT") logs can subject the employee to discipline up to and including termination.

In January 2003, Rick Pogliano became manager of the Fremont terminal and Plaintiff's supervisor. Plaintiff admits that he and Pogliano had a disagreement on the proper way to log safety breaks, and that the two did not get along. Plaintiff alleges that Pogliano would not prepare his freight in a timely manner in order to put him behind schedule. Plaintiff stated that he would have to exceed the speed limit in order make his scheduled delivery times. Plaintiff

believed that Pogliano was hired to cut costs, and that Pogliano targeted him for termination because he was the oldest and highest paid driver.

Because the amount of time spent driving is federally regulated, the most contentious point between Plaintiff and Pogliano centered on safety breaks. Plaintiff believed that breaks taken for safety purposes were to be logged as off-duty time, and were not to be counted against the employee's total daily and weekly hours of service. Plaintiff believes that the Surface Transportation Assistance Act, ("STAA") allows drivers to take breaks, whenever fatigued or ill, in order to ensure the safety of the driver and highway travelers. In June 2003, Plaintiff was issued an Employee Incident Report reflecting his violation of the 60 hour service rule and improper method of logging safety breaks. This arose out of an event on June 14, 2003, where Plaintiff had taken an hour and a half safety break during his run from Fremont, Indiana to Cincinatti, Ohio. He logged this break as "off-duty" time. Defendant contends that according to federal law, the safety break should have been listed as "on duty time, not driving" because Plaintiff had not been relieved by CCX of all "responsibility for performing work." By including the hour and a half safety break in his weekly on-duty time, Plaintiff went over his 60-hour weekly limit by fifteen minutes and was issued an incident report warning. Plaintiff admits that at that time, he discussed log violations with Pogliano. Plaintiff's June 2003 performance appraisal also references his need to improve management and accuracy of his driving logs. He also recalled speaking with his immediate supervisor, Doug Ingraham, about log accuracy. From this time until his termination, Plaintiff did not have any other disciplinary events.

On the evening of December 4, 2003, Plaintiff was assigned to drive the Detroit route.

At some point during his shift, Plaintiff began to feel sick from both the fumes from the fork lifts at the Detroit terminal and from what was later diagnosed as acute bronchitis. He was given an empty trailer to run back to the Fremont, Indiana terminal. He admits that no one at CCX told him to drive even though he was ill. During this trip, Plaintiff parked his truck for approximately three hours in order to rest. He did not call dispatch to let them know he would be late. His estimated arrival time at Fremont was originally 4:50 a.m. However, Plaintiff did not actually arrive at the facility until close to 8:00 a.m. Upon his arrival, Plaintiff completed his DOT log by writing in an arrival time of 5:00 a.m. He also completed his payroll sheet by manually writing in an arrival time of 5:05 a.m. Plaintiff could have completed his payroll sheet by logging out on a time clock. Plaintiff admits that he wrote down these inaccurate times. Unlike the June incident, Plaintiff did not just log his safety break inaccurately as off-duty, he did not log the time at all. Plaintiff claims he did this because he felt he would be disciplined again for taking a safety break. Plaintiff also claims the high fever from his illness caused him to write down inaccurate times. He testified: "Yeah, it was 8:00 when I actually arrived myself because I come inside, my eyes started watering, the fever was getting up with me. I just figured the heck with it, straight line it across [the graphic representation of the driver's time spent at different tasks], and that was the end of the story right there." Dep. of Abbs at 191. Upon noticing the almost three hour discrepancy on Plaintiff's log and payroll sheet with the time Plaintiff actually arrived, Pogliano became concerned that Plaintiff had falsified the documents.

Pogliano contacted Regional Manager, Dan Pence, who advised Pogliano to contact CCX Human Resources to discuss the situation. Pogliano called Personnel Manager Paul Frayer in Human Resources. Frayer advised Pogliano to contact Plaintiff in order to discuss the situation.

4

Pogliano called Plaintiff at home on the evening of December 5, 2003, and asked why there was such a discrepancy between his actual arrival time at the facility and the times manually entered on both the payroll sheet and the DOT log. According to Pogliano, Plaintiff replied that he was short on the hours he needed in order to drive the Cincinatti route the following day. Plaintiff contends that he was too sick to work, and that it does not make sense that he would try to save hours for a run that, because of his health, he was unable or unwilling to make. On the following Monday, Frayer, Pogliano, and Plaintiff participated in a conference call to discuss the situation. Frayer again asked Plaintiff for the reasons for the discrepancy. According to Frayer, Plaintiff replied that he did not know. According to Plaintiff, he replied that the discrepancies were a result of his illness; that the logs were inaccurate because he did not know what he was doing because of his fever and fatigue. Plaintiff also alleges that he was rebuffed when he attempted to explain the discrepancies due to illness, and was told, "we don't want to hear you were sick." Frayer discussed the matter with Human Resources Director Michael Leathers, and the decision was made to terminate Plaintiff on the basis of the inaccurate and "falsified" driving log.

Plaintiff requested that his termination be reviewed by CCX's Employee Termination Review Board ("ETRB"). The ETRB, made up of high-level CCX executives held a hearing on Thursday, December 11, 2005. After listening to both Plaintiff and Pogliano and considering all the information made available, the Board unanimously voted to uphold the termination. Plaintiff contends that he was not allowed to present evidence of his illness or how Pogliano discriminated against him because of his age. Plaintiff alleges that other drivers routinely falsified logs, were not disciplined for doing so, or were allowed to correct mistakes on previously submitted logs.

5

Defendant seeks summary judgment on all four counts of Plaintiff's complaint. Defendant contends that: Plaintiff's breach of employment contract must fail because he was an at-will employee; Plaintiff has failed to establish a *prima facie* case of age discrimination under the Age Discrimination in Employment Act ("ADEA"); Plaintiff's retaliation claim brought pursuant to the ADEA should be dismissed because he cannot show that the person who terminated him knew of his protected activity, or that the protected activity played a significant factor in his termination, and; Plaintiff's discrimination and retaliation claims should be dismissed because he has presented no evidence that shows the reason for termination was a pretext for discrimination or retaliation.

## II.     STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex,

477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not

be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252

### III.   ANALYSIS

#### A.   Plaintiff's ADEA Claim

29 U.S.C. § 623(a)(1) makes it unlawful for an employer to discriminate against an employee on the basis of age. Claims of discrimination brought pursuant to the ADEA and Title VII are analyzed under the same framework. Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir. 2002). Therefore, the Title VII analytical framework applies here to the extent that Plaintiff's age discrimination claim is based on circumstantial evidence.

> To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must come forward with evidence that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected. Burzynski v. Cohen, 264 F.3d 611, 622 (6th Cir. 2001) (citing Barnett v. Dep't of Veterans Affairs, 153 F.3d 338, 341 (6th Cir.1998)). The fourth element may be satisfied "by showing that similarly situated non-protected employees were treated more favorably." Talley v. Bravo Pitino Rest., 61 F.3d 1241, 1246 (6th Cir.1995). If the plaintiff successfully establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action. Burzynski, 264 F.3d at 622. "If the defendant comes up with such a reason, the plaintiff must then demonstrate by a preponderance of the evidence
>
> that the defendant's proffered reason was a pretext for age discrimination." Id.

Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 510-11 (6th Cir. 2004).

Defendant argues that Plaintiff cannot establish a *prima facie* case of age discrimination

8

because he cannot show that he was replaced by a substantially younger applicant. Plaintiff, however, claims that a number of 20-year old drivers were hired to replace him. In this context, it is hard to say whether Plaintiff was replaced by a substantially younger applicant because it depends on the context of "replaced." No employee was hired to replace Plaintiff in the sense that a younger driver did not drive the same routes that Plaintiff drove. His Cincinatti route was temporarily completed by Jeff Wyman, who was 42 years old at the time, pursuant to the bid process established by CCX. In January 2004, the Cincinatti run, along with all of the other runs, went up for yearly bid to all of the drivers. CCX drivers are awarded routes based on seniority. Feasel bid for the Cincinatti run at that time and was granted the bid based on his seniority date. However, because CCX does not claim that it was downsizing, another driver would have to be hired somewhere in the company's hierarchy in order for CCX to ensure they had enough drivers. Because of a lack of seniority, the younger driver would not receive Plaintiff's Cincinatti route; however, it does not necessarily follow that Plaintiff was not replaced. Therefore, whether a younger applicant was hired to in order to replace Plaintiff is a question of fact, and for purposes of this motion, Plaintiff has established a *prima facie* case of age discrimination.

     Next, Defendant contends that it has presented a legitimate, nondiscriminatory reason for the termination that rebuts the presumption created by the *prima facie* case of age discrimination. Once a an employer presents a legitimate, nondiscriminatory reason for the termination, the burden shifts to Plaintiff, who "must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination." Burzynski v. Cohen, 264 F.3d 611, 622 (6th Cir. 2001). Defendant stated it fired Plaintiff because he falsified his DOT

log and his company payroll sheet. The Sixth Circuit has set forth what evidence a plaintiff must proffer in order to show that an employer's alleged legitimate reason for its adverse action against the plaintiff was a mere pretext: "the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6th Cir.1994). "Summary judgment is appropriate when the plaintiff fails to produce evidence from which a jury could reasonably conclude that the employer's reasons were pretextual." Coomer, 370 F.3d at 511.

Plaintiff admitted that he did not properly log his hours of service on December 4 and 5, 2003. Dep. of Abbs at 191-192 and 197. Plaintiff was also disciplined in the past for incorrectly completing his logs. Dep. of Abbs at 60, 304 and 316. Further, on December 5th Plaintiff did not log his safety break as either on duty or off duty because he did not log it at all. Therefore, Plaintiff cannot establish that the proffered reason had no basis in fact.

Next, Plaintiff cannot establish that the proffered reasons did not actually motivate his discharge, because he cannot "prove that [the] employer's proffered reason is unworthy of credence." Gavalik v. Continental Can Co., 812 F.2d 834, 853 (3d Cir. 1987). The plaintiff must "indict the credibility of his employer's explanation by circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, . . . the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or a coverup." Manzer, 29 F.3d at 1084. However, in order to withstand summary judgment, Plaintiff must produce evidence that is more than the

10

nonmovant's own pleadings and affidavits and must be sufficient evidence upon which a jury could reasonably find for the non-movant. See Smith, 250 F.3d at 1036, Anderson, 477 U.S. at 252. Plaintiff has failed to produce such evidence.

Finally, Plaintiff cannot establish that the proffered reason was insufficient to motivate discharge. Falsifying company records and DOT logs is an offense that can result in termination. Def.'s Ex. D, Driver Sales Representative's Survival Guide, at 10.

### B.   Plaintiff's Claim for Retaliation in Violation of 29 U.S.C. § 623(d)

"In order to establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." Allen v. Michigan Dept. of Corrections, 165 F.3d 405, 412 (6th Cir. 1987).

In his pleadings, Plaintiff contends that taking a safety break was the protected activity for which he was terminated. At his deposition, when asked the basis for his retaliation claim, he testified only that it is based on Pogliano, "ragging on [him] all the time." Dep. of Abbs at 298. Plaintiff also asserted that he confronted Pogliano regarding his belief that Pogliano treated him differently because of his age.

First, Plaintiff has presented no case law or argument supporting the assertion that taking a safety break is a protected activity under Title VII or the ADEA. Taking a safety break is unrelated to age or any other civil right. Plaintiff has produced no other evidence that establishes he exercised a protected right of any kind. Therefore, Plaintiff's retaliation claim should fail for this reason alone. However, it is possible that the alleged complaint to Pogliano about

11

Pogliano's ageist behavior in June was the exercise of a protected right for which he was terminated.  Thus, the remaining requirements for a retaliation claim will be addressed.

Plaintiff has not presented evidence that Pogliano possessed the authority to terminate him.  He also has not presented evidence that Frayer and Leathers, who made the ultimate decision to terminate him, knew that he accused Pogliano of age discrimination six months earlier.  To the contrary, Plaintiff alleges that Pogliano did not comply with company policy to report charges of age discrimination.  Thus, Plaintiff's own allegations contradict his claim; those with the ultimate authority to terminate him had no knowledge of Pogliano's alleged age bias.

Next, "[t]o establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)(citations omitted).  "[E]vidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."  Allen, 165 F.3d at 413.  Plaintiff has not presented any evidence to suggest that he would not have been terminated had he not complained about Pogliano's allegedly ageist behavior, or that he was treated differently than identically situated employees.  Further, even if Plaintiff presented evidence that Frayer and Leathers knew that he complained about Pogliano in June, the temporal proximity between the accusation and Plaintiff's termination severely weakens the causal connection between his termination and the accusation.  Therefore, Plaintiff has failed to

establish a viable retaliation claim.

   C.  **Plaintiff's Wrongful Discharge Claim.**

  Plaintiff claims he was terminated for following federal rules and guidelines regarding driver safety because he took a safety break in the early morning of December 5, 2003. However, the statutes cited by Plaintiff only protect employees who *refuse* to operate a commercial vehicle because: "the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety or health; or (ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's unsafe condition." 49 U.S.C. § 31105(B).   Likewise, "a motor carrier shall not require or permit a driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle."   49 C.F.R. § 392.3(a) (2005).   Plaintiff admitted at his deposition that no one at CCX required him to drive on December 5, 2003, after informing them he was too ill to safely drive his truck.  Dep. of Abbs at 228.  Plaintiff further testified that Pogliano never told him he could not take a safety break.  <u>Id</u>. at 341.  Plaintiff's own admissions, and the statutes themselves, negate his claim that he was wrongfully terminated for following the mandates of the FMCSR and the STAA.

  Plaintiff also bases his wrongful discharge claim on various CCX policies that range from disciplinary procedures to age discrimination.  Plaintiff argues that these policy manuals created an implied contract where he could only be terminated for just cause.  "To overcome the presumption of employment at will, a party must present sufficient proof either of a contractual provision for a definite term of employment or a provision forbidding discharge absent just

13

cause." Rood v. General Dynamics Corp., 507 N.W.2d 591, 597-98 (Mich. 1993)(footnotes omitted).

> In order for an implied contractual term to exist, it must rise the level of a promise.
>
> As is readily apparent, not all policy statements will rise to the level of a promise. For instance, an employer's policy to act or refrain from acting in a specified way if the employer chooses is not a promise at all. Also apparent in the definition of a promise is the need for specificity. The more indefinite the terms, the less likely it is that a promise has been made. And, if no promise is made, there is nothing to enforce.

Id., at 607. However, Plaintiff repeatedly alleges that CCX never distributed its policies and handbooks to its employees. Therefore, the policies contained therein cannot be a source for Plaintiff to claim that he legitimately expected that he would be terminated only for just cause. Moreover, nothing in the cited policy language can be construed to create a just cause standard for termination. There is no "clear and specific employer policy statements regarding employee discharge" that are "reasonably capable of being interpreted as promises to discharge only for just cause." Id. Therefore, Plaintiff's wrongful discharge claim is dismissed.

### D.     Plaintiff's Breach of Employment Contract Claim.

The analysis of Plaintiff's breach of employment contract claim closely resembles his wrongful termination claim, because both require a plaintiff to establish that a contract provision for employment for a definite term, or termination only for just cause, existed. See Lytle v. Malady, 579 N.W.2d 906, 911 (Mich. 1998), Toussaint v. Blue Cross & Blue Shield of Michigan, 292 N.W.2d 880, 893-94 (Mich. 1980). The contract provision can either be express or implied through policies or statements that create a legitimate expectation that the employee would be terminated only for just cause. Plaintiff, in essence, argues that his termination was not fair or reasonable in light of the policy language regarding disciplinary steps, because of his

health at the time he completed the log, and because CCX did not conduct an investigation of his age bias complaint.

> The first step in analyzing a legitimate expectations claim under Toussaint, is to determine, what, if anything, the employer has promised.
> . . .
> Once it is determined that a promise has been made, the second step is to determine whether the promise is reasonably capable of instilling a legitimate expectation of just-cause employment in the employer's employees. In this regard, we note that only policies and procedures reasonably related to employee termination are capable of instilling such expectations.

Rood, 507 N.W.2d at 606-07.

However, Plaintiff testified that he understood both Indiana and Michigan were at-will employment states and that he signed his application, which also provided at-will employment language. Dep. of Abbs at 101-103. CCX's employment-offer letter also states he would be hired as an at-will employee. On that basis, both CCX and Abbs had the right to terminate the employment relationship at any time and for any reason. Plaintiff knew he was an employee at will, and he cannot point to any contract language which provides employment for a definite term or forbids termination except for just cause.

Finally,

> The handbook contains no mandatory provisions or specific procedures, regarding employee discharge. Although it purports to adopt "overall policies of employment and standards of conduct which are fair to all employees," such statements are insufficient to permit a reasonable inference that [Defendant] intended to give up its right to discharge employees at will. A promise of fairness, without more, is too vague to judicially enforce.

Rood, 507 N.W.2d at 607-08. The policies do spell out specific procedures for allegations of discrimination and fair disciplinary procedures, but those do not factor into the analysis in the decision to terminate Plaintiff for "falsifying" DOT logs. As stated above, in order for an

15

implied contractual term to exist, it must rise the level of a promise, and "not all policy statements will rise to the level of a promise." Id., at 607. Nothing in the policy framework can be construed to create a just cause standard for termination, or employment for a definite term, because there is no "clear and specific employer policy statements, regarding employee discharge." Id. Simply put, there is no basis for Plaintiff to imply a just cause termination standard, or an employment contract for a definite period, from the proffered evidence.

### IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: September 30, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were mailed to Donald M. Thinschmidt and F.R. Damm on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
CASE MANAGER